UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STACIE BARKER,

                Plaintiff,

      v.                                      Case No. 20-CV-38

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

                Defendant.

## DECISION AND ORDER

### 1. Introduction

Alleging she has been disabled since June 1, 2010 (Tr. 15, 39), plaintiff Stacie Barker seeks disability insurance benefits. Her date last insured was June 30, 2015. (ECF No. 15.) After her application was denied initially (Tr. 38-92) and upon reconsideration (Tr. 94-98), a hearing was held before an administrative law judge (ALJ) on June 25, 2018 (Tr. 35-67). On October 31, 2018, the ALJ issued a written decision concluding that Barker was not disabled. (Tr. 10-32.) After the Appeals Council denied Barker's request for review on November 6, 2019 (Tr. 1-6), Barker filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that "[t]he claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010 through her date last insured of June 30, 2015." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Barker has the following severe impairments: "aortic valve replacement; osteoarthritis; degenerative disc disease; history of carpal tunnel syndrome; vertigo; migraines; anxiety; depression; and panic attacks." (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that, "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ found that,

> through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can frequently balance, crouch, kneel, and stoop. She can frequently climb ramps and stairs, but should never crawl. The claimant must also never climb ladders, ropes, or scaffolds. She can perform frequent bilateral reaching, overhead reaching, handling, fingering, and feeling. The claimant cannot have exposure to dangerous moving machinery or unprotected heights. Mentally, the claimant is limited to understanding, carrying out, and remembering no more than simple instructions. She can

perform simple and routine tasks. She is also allowed to be off task 10% of the day in addition to regularly scheduled breaks.

(Tr. 19.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Barker "was unable to perform any past relevant work." (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that there were jobs that existed in significant numbers that the national economy that Barker could perform. (Tr. 25.) He identified specifically jobs as call-out operator (DOT 237.367-014), receptionist (DOT 237.367-046), and hand packager (DOT 559.687-014).

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. Analysis

   4.1. Percent of Time Off Task

The ALJ found that Barker may be off task up to ten percent of the workday. (Tr. 19.) While this common ten percent limitation is not necessarily meant to express mathematical precision, *see Priessnitz v. Berryhill*, No. 17-C-372, 2018 U.S. Dist. LEXIS 33095, at *28 (E.D. Wis. Mar. 1, 2018), the ALJ must nonetheless ground his conclusion in and connect it to the medical evidence, *Finzel v. Colvin*, No. 15-C-98, 2015 U.S. Dist. LEXIS 107184, at *16 (E.D. Wis. Aug. 14, 2015). Often, the ten percent limitation appears to be chosen for little more reason than that vocational experts commonly say it is the maximum an employer will tolerate. *See Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017); *Whyte v. Saul*, No. 18-CV-1274, 2019 U.S. Dist. LEXIS 185830, at *22 (E.D. Wis. Oct. 25, 2019); *Finzel*, 2015 U.S. Dist. LEXIS 107184, at *16 (discussing *Rapp v. Colvin*, No. 12-

cv-353, 2015 U.S. Dist. LEXIS 34106, at *13 (W.D. Wis. Mar. 19, 2015); citing *Bochat v. Colvin*, No. 15-C-34, 2015 U.S. Dist. LEXIS 96227, at *31 (E.D. Wis. July 23, 2015)).

The ALJ explained that, due to her migraines, vertigo, and dizziness, Barker would be off task more than the standard time allotted for breaks, but these symptoms would not result in her being off task more than ten percent of the workday. (Tr. 22.) No further limitation was appropriate, the ALJ explained, because a CT scan of her head was normal, her complaints of migraines were limited, the vertigo and dizziness worsened only after her date last insured, before which she had only limited treatment for these symptoms. (Tr. 22.) Barker argues that remand is required because the ALJ "played doctor" and did not adequately explain the basis for this ten percent off-task limitation.

It is unnecessary to consider the merits of Barker's arguments because Barker has not shown she was harmed by any alleged error—that is, she has not shown that she would have been off task more than ten percent of the workday. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result").

The only evidence Barker offers in an attempt to show that she would be off task more than ten percent of the workday is her testimony that she naps for an hour each day. (ECF Nos. 12 at 16; 22 at 7; Tr. 56-57.) Barker testified that she was napping or "at least laying down for an hour or so every afternoon" even in the summer of 2015 when

6

Case 2:20-cv-00038-WED   Filed 03/08/21   Page 6 of 13   Document 23

she was last insured. (Tr. 56-57.) But the ALJ considered and rejected this evidence. (Tr. 22.) He stated that "earlier treatment notes fail to document frequent and persistent complaints of fatigue. Thus, treatment notes during the period at issue are inconsistent with the level of fatigue that the claimant alleged." (Tr. 22.) Barker does not argue that the ALJ's assessment of this evidence was legally flawed.

Having rejected this evidence once, there is no need to remand so the ALJ can reject it again. Because this is the only evidence Barker offers to support her claim that she would be off task more than ten percent of a workday, any technical error the ALJ might have made in concluding that she would be off task no more than ten percent of the workday was harmless.

Barker's related argument that the ALJ impermissibly played doctor rests on an overly expansive understanding of this commonly alleged error. *See Arrowood v. Saul*, No. 19-CV-1835, 2021 U.S. Dist. LEXIS 35227, at *5-7 (E.D. Wis. Feb. 25, 2021). "While an ALJ may not substitute her own judgment for a physician's without relying on other medical evidence of record, []he is not only allowed to, but must, weigh the evidence, draw appropriate inferences from the evidence, and, where necessary, resolve conflicts in the evidence." *Sauer v. Saul*, No. 19-C-927, 2020 U.S. Dist. LEXIS 108750, at *36 (E.D. Wis. June 19, 2020). An ALJ does not impermissibly play doctor simply because he discounts the formal medical opinions in the record. *Arrowood*, 2021 U.S. Dist. LEXIS 35227, at *5-7. An

ALJ's conclusions need not match any physician's opinion. *Whitehead v. Saul*, No. 20-1528, 2020 U.S. App. LEXIS 40760, at *18 (7th Cir. Dec. 30, 2020).

Even if the ALJ discounts the formal medical opinions in the record, he must nonetheless assess the medical evidence. *Arrowood*, 2021 U.S. Dist. LEXIS 35227, at *5-7. Assessing the medical evidence is not the same as impermissibly interpreting medical tests or findings. *Dingman v. Saul*, No. 19-cv-1056-bbc, 2020 U.S. Dist. LEXIS 162282, at *16 (W.D. Wis. Sep. 4, 2020) ("[I]t makes sense that ALJs would be permitted to consider medical records without the assistance of an expert when the records do not require medical expertise to interpret." (quoting *Salvino v. Saul*, No. 19-cv-422-jdp, 2020 U.S. Dist. LEXIS 14338, 2020 WL 467902, at *2 (W.D. Wis. Jan. 29, 2020)); *Sauer v. Saul*, No. 19-C-927, 2020 U.S. Dist. LEXIS 108750, at *36 (E.D. Wis. June 19, 2020) (noting that the ALJ was not interpreting raw medical images or test data) (citing *Frye v. Saul*, No. 18-cv-550-wmc, 2020 U.S. Dist. LEXIS 8954, at *21 (W.D. Wis. Jan. 17, 2020)); *see also McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (finding that an ALJ impermissibly interpreted an MRI); *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (same); *Harris v. Saul*, 835 F. App'x 881 (7th Cir. 2020) (rejecting argument that the ALJ impermissibly played doctor and finding that "the ALJ reasonably reviewed the evidence to determine that, aside from her two hospitalizations, Harris did not experience symptoms supporting greater limits than what the agency doctors found").

Here, the ALJ assessed the medical evidence in accordance with his obligation to weigh the evidence; he did not cross the line into playing doctor. The ALJ not having committed an error of law, the court's concern is strictly with whether his decision is supported by substantial evidence. Because substantial evidence supports the ALJ's conclusion, the court cannot upset it.

Finally, although Barker discusses the fact that the ALJ found her moderately limited with respect to concentration, persistence, and pace, she does not develop this observation into an independent claim of error. *Cf. Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020). Having failed to develop an argument, any potential argument is forfeited. *Overton v. Saul*, 802 F. App'x 190, 193 (7th Cir. 2020).

**4.2. Handling, Fingering, and Reaching**

During the relevant period, Barker suffered from arthritis and carpal tunnel syndrome. With respect to her arthritis, Barker said that "her hands and fingers were painful, which made activities like dressing more difficult" (Tr. 19), "she has joint pain" (Tr. 19), and "buttoning and other fine motor tasks were problematic" (Tr. 19).

Barker first reported her symptoms in 2009 and was prescribed methotrexate, which did not curb the progression of her arthritis. (Tr. 20.) Late in 2012 she was prescribed Humira, which helped, but had to be discontinued in in mid-2013 due to her cardiac issues, leading to increased pain. (Tr. 20.) By December of 2013, now on new medication, Barker's symptoms were overall mild, with the pain primarily in her

knuckles. (Tr. 20.) And her symptoms seemed to continue to improve. (Tr. 20.) In April of 2015, trace synovitis was noted in both hands. "In March 2016, the claimant said she was doing 'okay.' She had some diffuse myalgia and joint pain in hands, hips, and lower legs, but denied swelling in her joints." (Tr. 20.)

Barker's carpal tunnel syndrome also limited her ability to use her hands and fingers. This conditioned worsened after her date last insured, leading to surgery in 2017. (Tr. 21.)

As a result of these impairments, the ALJ found that Barker was limited to "frequent bilateral reaching, overhead reaching, handling, fingering, and feeling." (Tr. 19.) "Frequently" means one-third to two-thirds of the time, *see Elizabeth R. v. Saul*, No. 19 cv 1215, 2020 U.S. Dist. LEXIS 10289, at *21 (N.D. Ill. Jan. 22, 2020) (citing Program Operations Manual System, DI 25001.001(A)(33) Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001); *see also* SSR 83-10, or between two hours and forty minutes to five hours and twenty minutes in an eight-hour workday.

Barker argues that there was no evidence to support this finding because the ALJ rejected the only medical opinions—those of the state agency consultants—that addressed her ability to use her hands. But the state agency consultants concluded that Barker had *no* limitations in her ability to use her hands. Thus, Barker's argument is, in

effect, that remand is required because the ALJ found her *more* impaired than that which the medical evidence supported. Any such error, obviously, would be harmless.

Moreover, contrary to Barker's argument, this sort of routine assessment of the medical evidence does not constitute impermissible "playing doctor" but rather is an expected part of an ALJ's duty to assess a claimant's RFC. *See Hartwig v. Saul*, No. 18-CV-1508, 2020 U.S. Dist. LEXIS 17951, at *6-7 (E.D. Wis. Feb. 3, 2020); *see also Luzar v. Saul*, No. 19-cv-1018-jdp, 2020 U.S. Dist. LEXIS 161273, at *8 (W.D. Wis. Sep. 3, 2020) ("[T]he rule about playing doctor is generally applied when the ALJ rejects a medical opinion in favor of more expansive view of the claimant's abilities. In this case, the ALJ relied on the additional medical records to impose *more* restrictions on Luzar's ability to work, so there was no prejudice to Luzar.") (citing *Gibbons v. Saul*, 801 F. App'x 411, 417 (7th Cir. 2020); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016)).

Aside from recounting her general history of arthritis and carpal tunnel syndrome, which the ALJ acknowledged and discussed, the only evidence that Barker points to suggesting that she is more limited than the ALJ found is her own testimony that she could use her hands for only about 30 to 60 minutes before she would need a break of up to an hour. (ECF No. 12 at 22[1]; Tr. 54-55.)

---

[1] Barker also devotes portions of her brief and reply arguing she would be unable to work as an "elections clerk, and surveillance-system monitor." (ECF Nos. 12 at 21-22; 22 at 10.) However, these are not the representative positions that the ALJ found her capable of performing (Tr. 25) and do not appear to have been discussed anywhere in the record.

But the ALJ was not required to accept Barker's testimony. *See* SSR 16-3p. Barker does not develop any argument that the ALJ committed an error of law in assessing the subjective evidence regarding the severity of Barker's symptoms. Rather, Barker's argument simply amounts to a disagreement with the ALJ's conclusion. The court, however, may not reweigh the evidence to reach a different conclusion even if the court might have decided the issue differently had it been in the position of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The court may upset the ALJ's decision only if he applied the incorrect legal standards or the decision was not supported by substantial evidence. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ built the requisite "accurate and logical bridge" between the evidence and his conclusions. He summarized his conclusions by stating:

> Physical examinations sometimes showed tenderness and synovitis in these areas. However, overall, the claimant's arthritis remained generally stable. She had some increased symptoms after stopping Humira in the middle of 2013, but providers added other medications, which stabilized this condition. Given these factors, the undersigned found the claimant could perform a reduced range of sedentary work with reduced postural activities and only frequent bilateral reaching, overhead reaching, fingering, and feeling.

(Tr. 21.)

Barker has not shown that this conclusion was based on an error of law or unsupported by substantial evidence. Consequently, the court cannot upset it.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of March, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge